# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AARON DALTON,<br><br>          *Plaintiff*,<br><br>v.<br><br>DAVID M JOHNSON; and SANDRA K THIBODO-JOHNSON,<br><br>          *Defendants* | Case No. _____<br><br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Aaron Dalton, by and through the undersigned counsel, brings this action against Defendants David M Johnson and Sandra K Thibodo-Johnson, individuals, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this civil rights action against Defendants for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities.

2.     Defendants owns the restaurant known as "Dairy Queen" which to the extent it was constructed and first occupied after January 26, 1993 or was altered after January 26, 1993 was required to be designed and constructed to be readily accessible to persons with disabilities. To the extent "Dairy Queen" was not constructed or altered before January 26, 1993, it was required to remove barriers to access to the extent barrier removal was readily achievable. "Dairy Queen" contains architectural barriers to accessibility.

- 1 -

3.     The violations alleged in this complaint occurred at "Dairy Queen", located at 421 S Main St, River Falls, WI 54022.

4.     Defendants' failure to provide equal access to "Dairy Queen" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

5.     Defendants' conduct constitutes an ongoing and continuous violation of the law.

6.     Accordingly, Plaintiff seeks a declaration that Defendants' facilities violate federal law and an injunction requiring Defendants to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

7.     Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

8.     Venue in this judicial district is proper because Defendants are located and transact business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

9.      Plaintiff Aaron Dalton is a resident of the city of Burnsville, Minnesota. Plaintiff suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 et seq.

10.     Mr. Dalton suffers from Cerebral Palsy, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is substantially limited in major life activities, in-cluding standing and walking. Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 et seq. As a person with a disability, Plaintiff has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11.     Defendants David M Johnson and Sandra K Thibodo-Johnson, individuals, are the owners and operators of the real property and improvements which are the subject of this action, the restaurant known as "Dairy Queen", a place of public accommodation within the meaning of the ADA, located at the street address of 421 S Main St, River Falls, WI 54022.

## FACTUAL BACKGROUND

12.     On November 15, 2018 Plaintiff Dalton visited the restaurant "Dairy Queen" in River Falls, Wisconsin.

13.     Plaintiff found that the parking lot had 40 parking spaces but only 1 parking space reserved through signage as an accessible parking space.

14.     The 1 parking space reserved as an accessible parking space had an adja-cent triangular access aisle that did not extend the full length of the parking space.

- 3 -

15.     A curb ramp providing access between parking lot and the sidewalk surrounding the restaurant extended into the access aisle.

16.     The curb ramp extended up to the sidewalk, but the sidewalk had no level landing at the top of the curb ramp.

17.     The curb ramp also extended into the vehicular way of the "Dairy Queen" drive through.

18.     A garbage can obstructed the area at the top of the curb ramp, which would force Plaintiff to turn earlier on the curb ramp than would normally be necessary. Turning earlier on the ramp would expose Plaintiff to increased cross slopes, and make traversing the ramp more dangerous for Plaintiff.

19.     Images in Exhibit A to this Complaint depict the "Dairy Queen" parking space reserved as an accessible parking space, its adjacent access aisle, and the curb ramp as they appeared on Plaintiff's November 15, 2018 visit.

20.     In light of the architectural barriers at "Dairy Queen", Plaintiff Dalton is deterred from visiting "Dairy Queen" in the future. Plaintiff Dalton intends to return to "Dairy Queen", but these architectural barriers deter him from doing so. He plans to return and patronize "Dairy Queen" when he learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

21.     Plaintiff Dalton is a resident of Burnsville Minnesota, and he plans to continue visiting businesses in the western Wisconsin area in the future and would enjoy being able to patronize Defendants' restaurant.

22.     Plaintiff Dalton attempted to access Defendants' premises but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendants' premises. As a result of Defendants' non-compliance with the ADA, Plaintiff Dalton cannot independently

access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

23.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

    a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

    c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination; and

    e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

24.  Congress explicitly stated that the purpose of the ADA was to:

    a.  Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c.  Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

25.  Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

26.  The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

27.  Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26,

1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

28.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

29.     In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

30.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

31.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

32.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

33.     The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

34.     Defendants have discriminated against Plaintiff on the basis of his disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Dairy Queen". A specific, though not exclusive, list of unlawful physical barriers and

ADA violations present at "Dairy Queen" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a. The "Dairy Queen" customer parking lot had 42 parking spaces in its customer parking lot but had 0 parking spaces reserved as accessible spaces that complied with ADAAG 502, rather than the required 2, in violation of ADAAG 208.2. Plaintiff requires accessible parking spaces which comply with all elements of 502 (including location, width, length, signage, slope, and presence of an access aisle) to ensure he can park safely, make a safe transfer between his vehicle and wheelchair, and travel safely between the parking lot to the building entrance.

    b. The access aisle adjacent to the parking space reserved as an accessible parking space did not maintain at least 60 inches width for the full length of the parking space, in violation of ADAAG 502.3. Plaintiff uses a wheelchair for mobility and requires adequate space to make a safe transfer between his vehicle and the customer parking lot.

    c. The curb ramp providing access between the parking space reserved as an accessible parking space and the "Dairy Queen" building entrance projected into the access aisle, in violation of ADAAG 406.5 and 502.4. Plaintiff requires a level surface to make a safe transfer between his vehicle and the customer parking lot.

    d. The curb ramp providing access between the parking space reserved as an accessible parking space and the "Dairy Queen" building entrance projected into the vehicular way of the drive through, in violation of 406.5. Climbing from or descending directly into a traffic lane is dangerous for plaintiff.

e.  The top of the curb ramp at "Dairy Queen" did not have a landing at least 36 inches deep, in violation of ADAAG 406.4. Landings make curb ramps safer for Plaintiff to use as he ascends or descends ramps.

f.  A garbage can placed at the top of the curb ramp which would Plaintiff to turn on the ramp run, creating compound slopes, in violation of ADAAG 405.4. The change in path of travel required by the presence of the garbage can makes using the ramp more difficult and dangerous.

g.  "Dairy Queen" had 0 van parking spaces, in violation of ADAAG 208.2.4. Plaintiff travels in wheelchair vans and often needs the extra space provided by van parking spaces to make safe transfers.

35.  The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Dairy Queen". To qualify as an accessible parking facility, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502 – including, but not limited to, 502.4 which governs the floor or ground surfaces of both parking spaces and access aisles.

36.  In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Dairy Queen" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

37.  Compliance with the ADA standards, and the ADAAG is required by 42 U.S.C §§ 12182 and 12183 to the extent the facility was designed and constructed or al-

tered after January 26, 1993, and the violations to the ADAAG requirements are not a result of compliance being structurally impracticable. 28 C.F.R § 36.401(a)(1).

38.     In the alternative, to the extent any architectural elements were constructed prior to that date, compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendants due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

39.     Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

40.     As a person with a disability, Plaintiff Dalton has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

41.     Without injunctive relief, Defendants' failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to inde-

pendently access "Dairy Queen" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of his rights under the ADA.

## FIRST CAUSE OF ACTION
### Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

42.    Plaintiff incorporates and realleges the above paragraphs.

43.    Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

44.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

45.    Defendants have discriminated against Plaintiff and others in that they failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Dalton has been denied full and equal access to "Dairy Queen" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

46.     Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the ADA and ADAAG are ongoing.

47.     Defendants have failed to remove architectural barriers to full and equal access by Plaintiff Dalton, even though removing the barriers was required and is readily achievable.

48.     Plaintiff Dalton plans to visit "Dairy Queen" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to "Dairy Queen" unless and until Defendants are required to remove the physical barriers to access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

49.     This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendants to make "Dairy Queen" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Dairy Queen" until such time as Defendants cure the access barriers.

50.     Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

a. That the Court issue a Declaratory Judgment that determines that Defendants' facilities, at the commencement of the instant suit, are in violation of

Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

b.  That the Court award nominal damages.

c.  That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendants from continuing their discriminatory practices; including an order directing Defendants to remove all barriers to the maximum extent feasible or in the alternative make all readily achievable alterations to their facilities so as to remove physical barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

d.  That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

e.  That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED:  December 6, 2018

/s/ Padraigin L. Browne
Padraigin L. Browne (MN Bar # 389962)
Browne Law LLC
8530 Eagle Point Blvd, suite 100
Lake Elmo, MN 55042
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805